## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JOAN FABRICS CORPORATION, et al. | ) | Case No. 07-10479 (CSS) |
| A Delaware Corporation. | ) | (Substantively Consolidated) |
| | ) | |
| Debtors. | ) | Reference Docket No.: 974 |
| | ) | |

## OPINION[1]

FOX ROTHSCHILD LLP
Sheldon K. Rennie
Seth A. Niederman
919 Market Street, Suite 1300
Wilmington, DE 19801-3046
      -and-
Michael G. Menkowitz
Magdalena Schardt
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222

Counsel for Alfred T. Giuliano,
Chapter 7 Trustee for the estates of
Joan Fabrics Corporation, et al.

DUANE MORRIS LLP
Michael R. Lastowski
Christopher M. Winter
222 Delaware Avenue
Suite 1600
Wilmington, DE 19801

Counsel for Fred Godley

YOUNG CONAWAY
STARGATT & TAYLOR, LLP
Joseph M. Barry
Justin H. Rucki
1000 North King Street
Wilmington, DE 19801

Counsel for Rutherford County

Dated: May 5, 2014

Sontchi, J. _____

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## INTRODUCTION

Before the Court is a motion filed by a purchaser of certain properties to enforce a previously approved sale order.  The sale, which occurred under 11 U.S.C. § 363, was approved by the Court on July 5, 2007.[2]  Unpaid county taxes have been asserted against the purchaser, and the purchaser is of the belief that the terms of the sale prohibit the county from seeking satisfaction of such amounts from the purchaser.  Consequently, the purchaser now seeks to enforce the sale order, and requests that the Court hold the county in contempt and impose appropriate sanctions.

The motion will be denied.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court has the judicial power to enter a final order.

## STATEMENT OF FACTS

### I.    Factual History

On April 10, 2007, Joan Fabrics Corporation and Madison Avenue Designs, LLC (together, the "Debtors") each filed a voluntary petition under

---

[2] D.I. 441.

Chapter 11 of Title 11 of the United States Code in the District of Delaware.[3]  The Debtors' cases were directed into joint administration on the same day.[4]  On June 4, 2007, the Debtors filed a Motion for Authority to Sell Substantially All of Their Assets Free and Clear of Liens, Claims, and Encumbrances (the "Sale Motion").[5]  Notice of the sale was provided to "all applicable federal and state taxing . . . authorities, and their respective attorneys general," and the sale was approved by this Court on July 5, 2007.[6]  Pursuant to the sale, Mr. Fred Godley ("Godley") purchased several lots of real estate in Rutherford County, North Carolina (the "Properties") under the terms of an Asset Purchase Agreement (the "APA") dated July 5, 2007, between the Debtors, Gordon Brothers Group, LLC, and Godley.[7]

The sale specifically provided that Godley would purchase the Properties "subject only to the Permitted Encumbrances" and other conditions already set forth in the APA.[8] Permitted Encumbrances were defined in the APA to include:

> REAL PROPERTY taxes accruing from and after the Closing through the date of the DEED DELIVERY . . .
>
> Easements, liens, restrictions, encumbrances, encroachments, agreements and other matters of record, if any, affecting the REAL PROPERTY or any part thereof, provided the same do not materially adversely affect the use of the REAL PROPERTY as presently used . . .

---

[3] Motion to Enforce Sale, D.I. 974, ¶ 1.

[4] *Id.*

[5] *Id.* ¶ 2. *See* Sale Motion, D.I. 301.

[6] Order Approving the Sale Motion, Court Findings, D.I. 441, ¶ 4(e).

[7] D.I. 974, ¶ 3.

[8] Order Approving the Sale Motion, Order Provisions, D.I. 441, ¶ 9.

Any lien or encumbrance encumbering the REAL PROPERTY as to which Seller shall deliver or cause to be delivered to Godley, or to Godley's title company at or prior to the time of Closing, payment sufficient to satisfy the obligations secured by such lien or encumbrance (in the case of liens or encumbrances, if any, which secure the payment of money) or proper instruments, in recordable form, which upon recordation will cancel such lien or encumbrance, except such liens or encumbrances created or suffered by the actions or inactions of Godley, together with any other instruments necessary thereto and the cost of recording and cancelling the same;

Any lien or encumbrance as to which a reputable title company will insure, or commit to insure, Godley against loss or forfeiture of title to, or collection from, the REAL PROPERTY without additional cost to Godley, whether by payment, bonding, indemnity of Seller or otherwise . . . [9]

The APA also provided that Godley was to obtain a title commitment for title insurance on the Properties, and would provide specific written notice to the Debtor of any objections to the matters appearing on the title commitment:

(e) Godley's Review of Title. Godley shall promptly . . . [obtain a title insurance report and commitment, and] shall furnish to Seller (i) a copy of the Commitment and any survey ordered by Godley, and (ii) a written statement (the "Objection Notice") specifically identifying any liens or encumbrances affecting, or other defects in or objections to title to the REAL PROPERTY other than the Permitted Encumbrances, together with Godley's reasons for objecting to the same (the "Objection Parcel"). If Godley does not timely furnish the Seller with an Objection Notice, no portion of the OPTION PURCHASE PRICE allocated to any property comprising the REAL PROPERTY shall be deducted from or credited against the OPTION PURCHASE PRICE at the Closing. Except as expressly provided in this Agreement, Seller shall have no obligation to remove any exception to title. Seller shall notify Godley on or before the CLOSING as to whether or not it will cure the matter

---

[9] D.I. 441, Exh. A, Section 2(d).

> or matters objected to by Godley . . . If exceptions to title appear
> on the Commitment which Seller is not obligated to remove as
> provided below, and which are not Permitted Encumbrances,
> and if Seller is unable, or elects not, to eliminate such
> exceptions to title and, accordingly, is unable to convey title to
> one or more of the properties comprising the REAL PROPERTY
> in accordance with the provisions of this Agreement, Seller
> shall so notify Godley and Godley, within three (3) days
> thereafter, shall either (x) elect not to accept an assignment of
> the Option with respect to such property or properties by
> written notice given to Seller . . . or (y) elect to accept title to all
> or any the properties comprising the REAL PROPERTY subject
> to such exceptions, without any abatement of the OPTION
> PURCHASE PRICE and without any liability on the part of
> Seller, in which case Seller shall assign the Option to such
> REAL PROPERTY.[10]

It has been stipulated that Godley did not provide a written statement or other "Objection Notice" identifying defects in title for the Properties pursuant to this section of the APA.[11]  Similarly, no notice was provided to Godley of any exception to title that the Seller was not obligated to cure and that was not a Permitted Encumbrance.[12]  On November 19, 2007, the Court entered an order converting the Debtors' Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.[13]

Prior to the bankruptcy filing, the Debtor had submitted its 2007 Business Personal Property listing to the Rutherford County tax office in March 2007.[14]  It

---

[10] D.I. 441, Exh. A, Section 2(e).

[11] Joint Stipulation of Facts, D.I. 1015, ¶ 7.

[12] *Id.*

[13] D.I. 675.

[14] D.I. 976, pp. 2-3.  Copies of the listings can be found in D.I. 1015, Exh. F.

is alleged that, under North Carolina law, the Debtor was obligated to pay taxes on that personal property, but had failed to do so in 2007.[15]  Yet it has been stipulated that Rutherford County did not prepare a bill for these personal property taxes until August 16, 2007.[16]

By letter to Godley dated December 9, 2011, Rutherford County asserted a statutory lien on the Properties for the unpaid 2007 taxes (the "Purported Tax Lien"), allegedly owed by Joan Fabrics in connection with its personal property located on the Properties prior to the closing of the sale to Godley.[17]  Rutherford County asserts that it is owed a total of $111,228.56 in taxes and interest, and that because personal property taxes are a Permitted Encumbrance under the APA, Godley took the Properties subject to the lien of these taxes through the sale.[18] On January 9, 2012, Rutherford County mailed a Notice of Garnishment of Rents to a tenant on the Properties.[19]  It was agreed, however, that any garnished rent would be held in a trust account, pending resolution of the current dispute.[20]

Before the closing of the sale, a Funds Flow Memorandum was created to acknowledge payments already made between the parties, and to agree to future payments made on or following the closing.[21]  The memorandum marked that

---

[15] D.I. 976, p. 3.

[16] D.I. 1015, ¶ 17.

[17] D.I. 974, ¶ 7.  A copy of the Letter from Rutherford County is attached in Exh. C.

[18] *Id.* at Exh. C.

[19] D.I. 974, ¶ 10.  A copy of the Notice of Garnishment of Rents can be found in D.I. 1015, Exh. H.

[20] *Id.* at 11.  *See also* D.I. 1015, Exh. I.

[21] D.I. 1015, Exh. D.

$137,232.20 was to be deposited into escrow by the sellers for "Rutherford County Tax[es] (RE and Personal)" relating to one of the Properties, most likely referring to real estate and personal property taxes.[22]  Yet it is not detailed as to whether all or part of this amount was designated to cover the unpaid 2007 personal property taxes.

## II.    Procedural History and Posture

Within the present Motion, Godley states that Rutherford County "is in flagrant and willful violation of the Sale Order," and requests the Court to enter an order enforcing the Sale Order against Rutherford County, finding the county in contempt, imposing sanctions against the county, and granting related relief.[23] First, Godley argues that the Court should enforce the provisions of the Sale Order because the sale of the Properties was free and clear of liens other than liens "of record."[24]  Godley argues that the phrase "Easements, liens, restrictions, encumbrances, encroachments, and other matters of record, if any" within the definition of "Permitted Encumbrances," should be construed to mean "easements of record, liens of record, and so on."[25]  Because (i) the Purported Tax Lien was not recorded or filed anywhere, attached to the title of the Properties;[26] (ii) the Purported Tax Lien arose by operation of law, and are not considered to

---

[22] *Id.* at p. 4.

[23] D.I. 974, ¶ 13.

[24] *Id.* at ¶ 15.

[25] *Id.*

[26] *Id.* at ¶ 19.

be "liens of record" under North Carolina law;[27] and (iii) the taxes were not even due until after the sale had closed,[28] Godley maintains that the Properties were sold free and clear of the Purported Tax Lien.[29]   At best, Godley argues, the Purported Tax Lien attached to the proceeds of the sale only.[30]

Second, Godley argues that Rutherford County is in violation of express provisions of the Sale Order, and that the Court should thus hold it in civil contempt.[31]   Godley points to provisions of the Sale Order which state that: (i) "the Buyers shall not assume or be obligated to pay, perform, or otherwise discharge any debts, obligations, or liabilities of the Debtors arising pursuant to the Debtors' ownership or operation of their assets or facilities," prior to the date of the closed sale;[32] and (ii) "all persons are entities are forever prohibited and enjoined from commencing or continuing . . .  any action or proceeding . . . with respect to any Interests . . . relating to the Debtors, the Buyer, the Acquired Assets, the operation of the Acquired Assets prior to Closing, or Successor Liabilities, including . . . [e]nforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Buyer, its successors, assets or properties, including, without limitation, the Acquired Assets."[33]

---

[27] *Id.* at ¶¶ 19-21.

[28] *Id.* at ¶ 19.  *See also id.* ¶ 22 ("Upon information and belief, no tax liability was invoiced or determined for 2007 until after the sale had closed.")

[29] *Id.* at ¶ 23.

[30] *Id.*

[31] *Id.* at pp. 14-17.

[32] Order Approving the Sale Motion, Order Provisions, D.I. 441, ¶ 15.

[33] *Id.* at ¶ 14.

Additionally, Godley points out that Rutherford County received notice of the Sale Motion, yet they did not take action until "more than four years after the fact," and "insist[ed] on collecting rents from tenants of the . . . Properties."[34]

In its response, Rutherford County first argues that North Carolina law is clear in stating that outstanding personal property taxes constitute a lien against real property of the taxpayer, and this tax lien attaches as of January 1 of the calendar year.[35]   Second, Rutherford County argues that it is plausible that the term "of record," within the definition of "Permitted Encumbrances," refers only to "other matters," and as a result, Permitted Encumbrances includes "all easements, liens[,] restrictions, encumbrances, encroachments, and agreements . . . and 'other matters of record' is just the final category of Permitted Encumbrances."[36] Rutherford County maintains that this is a potential ambiguity which needs to be determined by parol evidence.[37]

Further, Rutherford County emphasizes that personal property tax liens in North Carolina are clearly liens of record – that the term "liens of record" includes more than just consensual liens recorded in the register of deeds office, but also statutory and judgment liens evidenced by the records of other government offices.[38]   It is pointed out that not only are personal property tax

---

[34] D.I. 974, ¶ 26.

[35] D.I. 976, p. 4.

[36] *Id.* at p. 5.

[37] *Id.*

[38] *Id.* at pp. 5-7.

liens recorded at the county tax office, but also liens of *ad valorem* real property taxes and liens for special assessments, such as lighting, sewer, and storm and water assessments by the local municipality.[39]

Godley then filed a reply to Rutherford County's argument,[40] to which Rutherford County filed a supplemental response.  The supplemental response separately argued that Godley took title subject to the 2007 personal property taxes because Godley did not object to the taxes under the APA, and because both the title insurance policy and the Funds Flow Memorandum gave notice to Godley of the possible unpaid taxes on the Properties.[41]

Separately, the Chapter 7 Trustee also filed a response to Godley's Motion, pointing out that Rutherford County cannot now assert a Chapter 11 administrative claim against the estate; the only recourse which remains is payment in the form of a general unsecured claim.[42]  The Trustee, however, does not take a formal position with respect to the current dispute.

---

[39] *Id.* at pp. 6-7.

[40] D.I. 979.

[41] D.I. 1016.

[42] D.I. 978.  Rutherford County's originally filed proof of claim asserted a secured claim, which was objected to by the Trustee on the grounds that there was no basis for the secured status.  *Id.* ¶¶ 11-13.  (Claim No. 583 was filed by the Rutherford County Tax office on January 23, 2008, in the amount of $113,284.04, which evidenced amounts due from the year 2007 in both real and personal property taxes on the Properties, as well as an additional property located at 207 Oakland Rd.  This claim was amended on March 21, 2011 to a value of $82,361.42, deeming the original claim a "filing error."  *See* Claims Register, Claim No. 583-1, Part 2).  The Court then entered an order modifying the County's claim to a general unsecured claim on May 31, 2011. D.I. 967, Exh. A.  (This Order, however, does not take into account the amendment made on March 21, 2011).

**DISCUSSION**

The issue to be determined here is whether the Purported Tax Lien is a recorded lien, and, thus, a Permitted Encumbrance.  The APA has included within its definition of Permitted Encumbrances "[e]asements, liens, restrictions, encumbrances, encroachments, agreements and other matters of record, if any."[43] First, the Court rejects Rutherford County's argument that this phrase refers to "all easements, liens[,] restrictions, encumbrances, encroachments, and agreements . . . and 'other matters of record' is just the final category of Permitted Encumbrances."[44]  In construing the contract, the Court may not detach "general words from accompanying expressions of an explanatory character, and often times, as in this case, a broad phrase must be construed as *ejusdem generis* with more limited descriptions in order to give effect to the obvious intention of the parties."[45]

The principle of *ejusdem generis* applies as follows: where general words follow a designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character

---

[43] D.I. 441, Exh. A, Section 2(d).

[44] D.I. 976, p. 5.

[45] *Cleveland Trust Co. v. Consol. Gas, Elec. Light & Power Co. of Baltimore*, 55 F.2d 211, 215 (4th Cir. 1932) (*citing* WILLISTON ON CONTRACTS (1920) at 1201; *Smith v. McCullough*, 104 U.S. 26, 28 (1881); *Alabama v. Montague*, 117 U.S. 602 (1886)).  While the principle of *ejusdem generis* is most commonly used in statutory interpretation, it has never been limited in this manner, unless the context of the document has shown a contrary intention.

and nature as those specifically enumerated.[46]  Several courts have also stated that this rule is particularly applicable where the specific enumeration precedes the word "other," followed by general words.[47]  Finding no contrary intention present within the APA, the Court does not hesitate to apply *ejusdem generis* of the term "of record" to the terms preceding it, therefore limiting the definition of Permitted Encumbrances to "easements of record, liens of record, encumbrances of record," and more.  Any other construction of this definition, as correctly pointed out by Godley, would subvert the intention of § 363(f) in allowing sales of assets free and clear of liens and encumbrances.

The Court, however, is not persuaded by Godley's argument that the Purported Tax Lien is not a "lien of record."  Before entering this analysis, some background on North Carolina tax law is required.

First, the Court assumes that there is a valid statute present which allows Rutherford County to levy a tax on personal property located within its borders. This levied tax becomes a tax lien on that personal property, from and after the levy.[48]

The levied tax can also become a lien on real property, under N.C. Gen. Stat. § 105-355(a).  The section provides as follows:

---

[46] *State v. Fenner*, 263 N.C. 694, 697-98 (1965).

[47] *See United States v. Sec. Mgmt. Co., Inc.*, 96 F.3d 260, 266 n.7 (7th Cir. 1996) ("The district court was correct to note that the argument in favor of the *ejusdem generis* rule would have more force if the word 'other' preceded the general term here.").  *See also United States v. Brown*, 536 F.2d 117, 122 (6th Cir. 1976); *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 293 (3d Cir. 2013).

[48] N.C. Gen. Stat. § 105-355(b) ("Taxes levied on real and personal property . . . shall be a lien on personal property from and after levy or attachment . . .").

> a) Lien on Real Property.--Regardless of the time at which liability for a tax for a given fiscal year may arise or the exact amount thereof be determined, the lien for taxes levied on a parcel of real property shall attach to the parcel taxed on the date as of which property is to be listed under G.S. 105-285, and the lien for taxes levied on personal property shall attach to all real property of the taxpayer in the taxing unit on the same date.

By a straightforward reading of the statute, it would appear that taxes levied on personal property become a lien on real property on the "same date" – namely, the date on which the real property listing is completed.  Yet the Fourth Circuit has interpreted the phrase "same date" to be the date on which the personal property listing has been completed, as seen in *In re Members Warehouse, Inc.,* 991 F.2d 116, 118-9 (1993).[49]

Here, the Debtor had submitted its business personal property listing to the Rutherford County tax office in March 2007,[50] several weeks before their bankruptcy filing in April 2007.  Both Section 105-355 and the Fourth Circuit have emphasized that a taxpayer's obligation arises on the date of the listing, even though the amount of tax has not yet been determined. [51]  On the date of listing, the property becomes part of the tax base.  The taxpayers become responsible for the property taxes assessed for the fiscal year, and a lien remains on the property if the tax is unpaid.[52]  Much of this stems from the taxation

---

[49] Notably, the statute provides that the value of both real and personal property are to be determined annually on January 1. *See* N.C. Gen. Stat. § 105-285(b), (d).

[50] D.I. 976, pp. 2-3.  Copies of the listings can be found in D.I. 1015, Exh. F.

[51] *In re Members Warehouse, Inc.,* 991 F.2d at 118-9.

[52] *Id.* at 119.

scheme relied on by local governments in North Carolina, which determines its tax base on the listing date, and then proceeds to determine how much revenue is needed to meet the expenses of local government:

> The local government then reviews the tax base and sets a tax rate thereon which will generate the necessary revenue. Under this scheme, the tax rate cannot be established until the tax base is known. *See Spiers v. Davenport*, 263 N.C. 56, 138 S.E.2d 762, 764 (1964). If a taxpayer's obligation to pay tax does not arise until the date the tax rate is set, the purpose and legal effect of listing property . . . is thwarted. [53]

Having established the existence and nature of the lien on the Properties, the Court now must address the question of whether this lien is a lien of record.

The term "of record" was examined in *County of Lenoir v. Moore*, 114 N.C. App. 110 (1994). Interpreting a version of N.C. Gen. Stat. § 105-241 that has since been amended, the court considered that the statute afforded priority to properly docketed State tax liens as against "other recorded specific liens."[54]  It concluded that local *ad valorem* tax liens, which included county personal property taxes, did not fall within the scope of "other recorded specific liens."[55]  In contrast, the dissent examined definitions of the word "record," looked to N.C. Gen. Stat. § 105-319 that determined how counties and tax-levying municipalities were to keep and compile tax information, and concluded that local *ad valorem* tax liens satisfied the definition of "other recorded specific liens."[56]  Notably, this case was

---

[53] *Id.*

[54] 114 N.C. App. at 116.

[55] *Id.*

[56] *Id.* at 123.

affirmed by the North Carolina Supreme Court without precedential value, having an equal number of justices voting to affirm and reverse the decision.[57]

Separately, in *County of Carteret v. Long*, the Supreme Court of North Carolina reversed a decision reached in the Court of Appeals for reasons stated within the dissent of the case.[58]  The dissent looked to N.C. Gen. Stat. § 105-241 (which had been amended since *County of Lenoire v. Moore*, and has been further amended until today) [59], and deemed state tax liens superior to local *ad valorem* tax liens.[60]  Since the statute provided priority to state tax liens over "duly recorded liens," the case can be construed to imply that local *ad valorem* taxes qualify as "duly recorded liens."  Yet the Court is not of the opinion that examining the priority of tax liens will aid in the determination of whether local *ad valorem* personal property taxes can be deemed as "liens of record."  Any interpretation of the tax priority rules, with regard to its brief mentioning of "duly recorded liens," or "other recorded specific liens," seems too attenuated here to prove helpful in determining the parties' intent within their contract.

In interpreting a contract, "any undefined, nontechnical word is given a meaning consistent with the sense in which it is used in ordinary speech, unless the context clearly requires otherwise."[61]  Black's Law Dictionary defines the

---

[57] 340 N.C. 104 (1995).

[58] 349 N.C. 285 (1998).

[59] *Moore* examined the version of § 105-241 present in 1992, whereas *Long* relied on the version present in 1997.  For a list of the other amendments, *see* N.C. Gen. Stat. Ann. § 105-241 (West).

[60] *Cnty. of Carteret v. Long,* 128 N.C. App. 477, 482-83 (1998).

[61] *State v. Philip Morris USA Inc.,* 363 N.C. 623, 632-33 (2009).

phrase "of record" as "recorded in the appropriate records."[62]    There is substantial support to find that North Carolina law considers the County Tax Office as the appropriate place for tax liens to be recorded.  Unlike federal tax liens, which are not valid unless notice has been filed in a specific location set by statute,[63] North Carolina's tax law does not currently contain any similar requirement.    While Godley asserts that "the appropriate records for real property is [sic] the register of deeds in the county where the property is located,"[64] this is not necessarily true for tax liens and tax records.    The cases which Godley relies upon refer to deeds of trust and easements, which operate under different statutes than local *ad valorem* taxes and tax liens on personal property.  The cases are thus inapplicable to the current dispute.[65]

Instead, the North Carolina statute has imposed listing requirements: "The person whose duty it is to list [tangible personal] property must list it in the county in which the place of taxation is located . . ."[66]    All listings and assessments are then "entered on the county tax records," which are submitted

---

[62] Black's Law Dictionary (9th ed. 2009).

[63] *See, e.g.*, 26 U.S.C. § 6323(a), (f).

[64] D.I. 974, pp. 1-2.

[65] Elsewhere, Godley relies on an article written by Charles Szypszak, citing that the source refers to municipal and county tax liens as unrecorded liens.  Yet the original source merely stYesates that liens for municipal and county real estate taxes are not required to be recorded with the register of deeds.  Charles Szypszak, *North Carolina's Real Estate Recording Laws: The Ghost of 1885*, 28 N.C. Cent. L.J. 199, 210 (2006) ("There are many other interests that can affect real estate that are not required to be recorded with the register of deeds . . . A lien for municipal and county real estate taxes attaches when the property is listed for taxes annually and has priority over other liens.")

[66] N.C. Gen. Stat. § 105-304.

for review by the board of equalization.[67]  The tax records are not only required to show "the assessment of each taxpayer's personal property listed" but also "the amount of *ad valorem* tax due by each taxpayer . . ."[68]  Finally, the statute states that "county tax records shall be filed in the office of the assessor unless the board of county commissioners shall require them to be filed in some other public office of the county."[69]

In addition, one key aim of recordation requirements is to provide notice to all interested parties of the existence of the lien or other encumbrance.[70]  The North Carolina taxation statute, however, specifies that there is to be a presumption of such notice:

> All persons who have or who may acquire any interest in any real or personal property that may be or may become subject to a lien for taxes are hereby charged with notice that such property is or should be listed for taxation, that taxes are or may become a lien thereon, and that if taxes are not paid the proceedings allowed by law may be taken against such property. This notice shall be conclusively presumed, whether or not such persons have actual notice.[71]

The Court thus concludes that the Purported Tax Lien, created after the Debtor filed its business personal property listing in March 2007, is indeed a lien

---

[67] N.C. Gen. Stat. § 105-319(d).

[68] N.C. Gen. Stat. § 105-319(c)(3), (8).

[69] N.C. Gen. Stat. Ann. § 105-321.

[70] 66 Am. Jur. 2d Records and Recording Laws § 40 ("The purpose of recording statutes is to protect subsequent purchasers or encumbrancers from unrecorded conveyances by notifying them of the rights that recorded instruments are intended to secure . . . Stated somewhat differently, the purpose of the recording statute is to protect a subsequent buyer without notice.")

[71] N.C. Gen. Stat. Ann. § 105-348.

of record in the Rutherford County tax office.  This recorded lien falls within the definition of Permitted Encumbrances under the APA.  Because Godley purchased the Properties subject to the Permitted Encumbrances, Godley purchased the real estate subject to the Purported Tax Lien.

Consequently, in looking to recover the unpaid taxes, Rutherford County is not in violation of the Sale Order.  Whether its conduct in seeking the taxes is barred on any other grounds, however, is not an issue for determination at this stage.

When taking into account equitable considerations, the Court is also persuaded by several of Rutherford County's arguments set forth in its supplemental response.[72]  First, the APA contained specific provisions allowing Godley to object to any liens or encumbrances, other than Permitted Encumbrances, affecting the real property purchased, under Section 2(e).  Such objection would either be cured by the seller, or if not, Godley was given the option to elect to not proceed with the sale.[73]  Second, the title insurance policy which Godley obtained specifically stated that Godley was taking title subject to "taxes for the year 2007, and subsequent years, not yet due and payable."[74]  In contrast, payment of taxes due for the year 2005 and 2006 were to be made before the title commitment could be secured.[75]  Finally, the Funds Flow Memorandum

---

[72] *See* D.I. 1016.

[73] D.I. 441, Exh. A, Section 2(e).

[74] D.I. 1015, Exh. C, p. 15.

[75] *See id*. at p. 12.

showed that the purchasers were aware of both real and personal property taxes owed by Rutherford County, and had permitted payment of certain of those taxes by the Gordon Brothers Group, LLC.[76]  With notice of 2007 tax obligations before the sale, as well as a failure to object to them as required by the proper procedure under the APA, the Court now remains unimpressed by Godley's request for the Court to enter an order finding Rutherford County in contempt and imposing sanctions against Rutherford County.

## CONCLUSION

Having determined that the asserted personal property tax claim falls within the definition of a Permitted Encumbrance under the parties' contract, and that the purchaser bought the property subject to such Permitted Encumbrances, the Court finds the county, in seeking to recover the unpaid 2007 taxes, not in violation of the Sale Order.

The Court will enter an order denying the Motion to Enforce the Sale Order.

---

[76] D.I. 1015, Exh. D, p. 4.